STATE OF NORTH CAROLINA v. EVERETT RANDOLPH HUFF

No. 372A87

(Filed 3 April 1991)

**Criminal Law § 1352 (NCI4th) — capital case — mitigating circum-stances — McKoy error — prejudice**

The trial court's instructions to the jury in the penalty phase of a first degree murder trial, taken as a whole, con-

stituted *McKoy* error where the court instructed the jury to answer each of the twenty-four mitigating circumstances submitted "no" if it did not unanimously find the circumstance by a preponderance of the evidence, the court gave two other instructions requiring unanimity on mitigating circumstances, the court instructed in the final mandate that the jury's decision must be unanimous as to each of the issues, and the "Issues and Recommendation" form directed the jury to answer "yes" to a mitigating circumstance only if the jurors found it unanimously to exist, notwithstanding the court also instructed the jury that any individual juror could consider a mitigating circumstance shown by defendant when the juror made his final recommendation as to defendant's sentence even if the circumstance had not been unanimously found by the jury. Furthermore, the State failed to demonstrate that this *McKoy* error was harmless beyond a reasonable doubt where defendant presented sufficient expert testimony to permit a reasonable juror to find the submitted impaired capacity mitigating circumstance set forth in N.C.G.S. § 15A-2000(f)(6) but the jury failed unanimously to find this mitigating circumstance.

**Am Jur 2d, Criminal Law § 598; Homicide §§ 513, 548, 555.**

ON remand from the United States Supreme Court, --- U.S. ---, 111 L. Ed. 2d 777 (1990), for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). Heard in the Supreme Court 12 February 1991.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Special Deputy Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

MEYER, Justice.

Defendant was convicted of the first-degree murder of his infant son, Crigger Huff, and of his mother-in-law, Gail Strickland. He received a sentence of death for the killing of his son and a sentence of life imprisonment for the killing of his mother-in-law. On defendant's direct appeal, this Court found no error in defendant's trial or sentencing proceeding and upheld the sentences imposed. *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989).

Subsequently, on 28 June 1990, the United States Supreme Court vacated the judgment of death and remanded the case to this Court "for further consideration in light of *McKoy v. North Carolina*." *Huff v. North Carolina*, --- U.S. ---, 111 L. Ed. 2d 777 (1990). On 3 October 1990, this Court ordered the parties to file supplemental briefs on the *McKoy* issue.

Except where necessary to develop and determine the issue presented to this Court on remand, we will not repeat the evidence supporting defendant's convictions and sentences, as that evidence is summarized in our prior opinion on defendant's direct appeal. *Huff*, 325 N.C. at 10-22, 381 S.E.2d at 640-47.

In *McKoy*, the United States Supreme Court held unconstitutional under the eighth and fourteenth amendments of the federal Constitution jury instructions directing that, in making the final determination of whether death or life imprisonment is imposed, no juror may consider any circumstance in mitigation of the offense unless the jury unanimously concludes that the circumstance has been proved. *McKoy*, 494 U.S. 433, 108 L. Ed. 2d 369. Our review of the record reveals that the jury here was so instructed. Specifically, the trial court instructed the jury to answer each mitigating circumstance "no" if it did not unanimously find the circumstance by a preponderance of the evidence. Thus, the issue is whether this *McKoy* error can be deemed harmless. *See State v. McKoy*, 327 N.C. 31, 44, 394 S.E.2d 426, 433 (1990). "The error . . . is one of federal constitutional dimension, and the State has the burden to demonstrate its harmlessness beyond a reasonable doubt." *Id.*; N.C.G.S. § 15A-1443(b) (1988). On the record before us, we conclude that the State has not carried this burden.

The trial judge submitted and the jury answered the mitigating circumstances as follows:

ISSUE TWO:

Do you unanimously find from the evidence the existence of one of [sic] more of the following mitigating circumstances?

ANSWER Yes.

. . . .

(1) The capital felony was committed while the defendant was under the influence of mental or emotional disturbance.

ANSWER Yes.

(2) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

ANSWER No.

(3) The age of the defendant at the time of the crime.

ANSWER No.

(4) Defendant's immaturity or his limited mental capacity at the time of the commission of the offense significantly reduced his culpability for the offense.

ANSWER No.

(5) Defendant cooperated with law enforcement officer [sic] by making the statement of February 11, 1985.

ANSWER No.

(6) Defendant made the statement of February 11, 1985 voluntarily and at his own request.

ANSWER No.

(7) Defendant acknowledged his involvement in the deaths prior to his arrest to family members and law enforcement officers.

ANSWER No.

(8) Defendant loved his baby.

ANSWER No.

(9) Defendant cared for his baby.

ANSWER No.

(10) Defendant earned a GED while in prison.

ANSWER No.

(11) Defendant served his Country by serving in the U.S. Army for one and one-half (1½) years.

ANSWER No.

(12) Defendant is an adult child of an alcoholic parent.

ANSWER No.

(13) Defendant had a very unfortunate childhood and was a victim of child abuse.

ANSWER No.

(14) Defendant sought treatment for drug and alcohol problems at the local mental health center.

ANSWER No.

(15) Defendant has had gainful employment in the past.

ANSWER No.

(16) Defendant did a good job while working at the bowling alley snack bar.

ANSWER No.

(17) Defendant did a good job while working at the Pizza Parlor.

ANSWER No.

(18) Defendant has expressed remorse for his crimes.

ANSWER No.

(19) Defendant did not intend to inflict unnecessary pain or suffering on the victim.

ANSWER No.

(20) Defendant has a history of behavior disorder during his developmental years.

ANSWER No.

(21) Defendant suffers from low self-esteem and feelings of inadequancy [sic] and ineffectiveness.

ANSWER No.

(22) Defendant was under a great deal of stress at the time of the offenses.

ANSWER Yes.

(23) Defendant has suffered from depression since the time of the offense.

ANSWER No.

(24) Any other circumstance arising form [sic] the evidence which the jury deems to have mitigating value.

ANSWER No.

Thus, the jury unanimously found two mitigating circumstances and rejected twenty-two. While the relationship of the number of mitigating circumstances found to those rejected is not determinative of the effect of erroneous instructions, it is some indication of their influence upon the jurors to be weighed along with other indicators.

The State contends that the *McKoy* error in this case is harmless because the jury was specifically instructed that any individual juror could consider a mitigating circumstance shown by defendant even if the circumstance had not been unanimously found by the jury.

The record reflects that the trial court explained the fourth issue as follows:

Issue Four is: "Do you unanimously find, beyond a reasonable doubt, that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty, when considered with the mitigating circumstance or circumstances found by you?["]

In deciding this issue, you're not to consider the aggravating circumstances standing alone. *You must consider them in connection with any mitigating circumstances found by you, even if the jury has not found, unanimously, the existence of a certain proposed mitigating circumstance[;] if an individual juror believes that that mitigating circumstance has been proved by a preponderance of the evidence in a particular case, that*

*juror may consider that mitigating circumstance in his evaluation on this fourth issue.*

(Emphasis added.)

The State argues that, by the above additional instruction, each member of the jury was specifically told that he or she was not precluded from considering and giving effect to a mitigating circumstance which was shown by a preponderance of the evidence when the individual juror made his final recommendation as to defendant's sentence. Thus, the State argues, the constitutional principle established in *McKoy* was not violated in the present case. We disagree. The State relies upon language in this Court's opinion in *State v. Jones*, 327 N.C. 439, 396 S.E.2d 309 (1990), where it was stated:

> The *McKoy* error here is not harmless because defendant presented substantial evidence to support at least some of the significant mitigating circumstances submitted to but not unanimously found by the jury. One or more jurors may have believed some or all of these circumstances existed and that the nonstatutory circumstances had mitigating value. Yet, the erroneous instructions prohibited these jurors from considering the mitigating circumstances not unanimously found when the jury made its ultimate sentencing decision. *Had each juror been allowed to consider the circumstances that he or she believed to exist while engaging in the final weighing process,* we cannot say beyond a reasonable doubt that there would not have been a different result as to sentence.

*Id.* at 449-50, 396 S.E.2d at 315 (emphasis added). The State's reliance upon the emphasized language is misplaced. That language assumes proper and appropriate instructions from the trial judge to the jury that do not require unanimity as a prerequisite to allowing an individual juror to consider circumstances he or she believed to exist.

The verbal instruction given the jury as to issue four, to the effect that any individual juror could consider any mitigating circumstance as to that issue even if it was not found unanimously by the jury, does not stand in isolation. " '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *State v. McNeil*, 327 N.C. 388, 392, 395 S.E.2d 106, 109 (1990) (quoting *Cupp v.*

*Naughten,* 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 373 (1973)); *see also Boyd v. United States,* 271 U.S. 104, 107, 70 L. Ed. 857, 859 (1926).

First, we note that the written "Issues and Recommendation as to Punishment" form, which the jurors had been handed individually to follow along as the verbal instructions were given, did not contain the alleged curative instruction, and it was never mentioned again by the trial judge. The written "Issues and Recommendation" form as to issue two directed the jury to answer "yes" to a mitigating circumstance only if the jurors unanimously found it to exist. As to the individual mitigating circumstances, the court instructed twenty-four times that the jurors must *unanimously* agree.

Again, as to issue two, the court instructed a twenty-fifth time:

If you do *unanimously* find, by a preponderance of the evidence, you will so indicate by having your foreman write, "Yes," in the space after the mitigating circumstance on the Issues and Recommendation form. If you do not unanimously find this mitigating circumstance, by a preponderance of the evidence, you would so indicate by having your foreman write, "No," in that space.

(Emphasis added.)

Finally, the court instructed a twenty-sixth time:

If you do not *unanimously* find by a preponderance of the evidence that at least one of these mitigating circumstances existed, and if you have so indicated by writing, "No," in the space after every one of them on that form, then you would answer Issue Two, "No," in that case.

(Emphasis added.) Further, the trial judge, in his mandate, instructed: "Again, your decision must be unanimous as to each of the issues and as to your recommendation in each of the cases."

We conclude that the instructions to the jury, taken as a whole, constitute *McKoy* error.

Further, we cannot conclude that such error was harmless by reason of insufficiency of the evidence to support any of the tendered mitigating circumstances not found by the jury. As previously indicated, twenty-four mitigating circumstances were submitted, but only two were found. The trial judge, finding uncon-

tradicted facts to support the existence of thirteen mitigating circumstances, gave peremptory instructions to the jury on these. The jury failed unanimously to find the existence of *any* of the circumstances upon which the court gave peremptory instruction.

The State did not brief or argue the issue of whether there was an insufficiency of the evidence to support one or more of the mitigating circumstances tendered but not found. Our detailed review of the evidence presented at trial convinces us that there was sufficient evidence to support one or more of them.

Dr. Brad Fisher, who was found by the court to be an expert in clinical psychology, testified at the sentencing phase that, in his opinion, defendant suffered from paranoid schizophrenia. He described the illness as a major thought disorder typified by delusions of grandiosity or persecution that the sufferer thinks to be true. He further testified that, in his opinion, "at the time of this crime, . . . [defendant] had severe limits in any ability to differentiate right and wrong in the areas where he had this deluded thinking—his mother-in-law, his son, his wife and their interconnections." This testimony went directly to the impairment contemplated and listed as mitigating circumstance number two.

Dr. Selwyn Rose, found by the court to be an expert in forensic psychiatry, testified that, based on his observation, in his opinion, defendant was unable, at the time of the crime, to understand the difference between right and wrong or to understand the nature and quality of his action. Dr. Rose concurred with Dr. Fisher that defendant was suffering from paranoid schizophrenia. Dr. Rose also testified that the condition was the most severe mental illness known and that it impairs the patient's judgment.

Dr. James C. Groce, a staff psychiatrist at Dorothea Dix Hospital and found by the court to be an expert in forensic psychiatry, also diagnosed defendant as a paranoid schizophrenic.

While this was not all the evidence pertinent to the tendered mitigating circumstance relating to defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, this evidence alone was sufficient to allow a reasonable juror examining defendant's behavior and mental problems to conclude that defendant's capacity to appreciate the criminality of his conduct was impaired.

STATE v. HUFF

[328 N.C. 532 (1991)]

In *State v. Sanders*, 327 N.C. 319, 395 S.E.2d 412 (1990), *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 782 (1991), two specified mitigating circumstances and the "catchall" circumstance were submitted to the jury. The jury unanimously found the mitigating circumstance that the murder was committed while the defendant was under the influence of a mental or emotional disturbance but failed to find unanimously that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired and failed to find unanimously the "catchall" circumstance. The *identical* two specified circumstances as well as the "catchall" circumstance were submitted to the jury in this case, and as in *Sanders*, the jury found only that the murder was committed while the defendant was under the influence of a mental or emotional disturbance. In *Sanders*, this Court vacated the sentence of death and ordered a new capital sentencing proceeding.

In light of the foregoing evidence, we cannot conclude beyond a reasonable doubt that the erroneous unanimity jury instruction did not preclude one or more jurors from considering in mitigation defendant's evidence of his diminished capacity to appreciate the criminality of his act or to conform his conduct to the requirements of the law. Nor can we conclude beyond a reasonable doubt that had such jurors been permitted, under proper instructions, to consider this circumstance, they would nevertheless have voted for the death penalty rather than life imprisonment. *See State v. Sanderson*, 327 N.C. 397, 403, 394 S.E.2d 803, 806 (1990). Because the circumstance in question is statutory, N.C.G.S. § 15A-2000(f)(6) (1988), it is presumed to have mitigating value if found. Given the evidence, we cannot conclude beyond a reasonable doubt that the constitutionally erroneous instruction did not prevent one or more jurors from finding the circumstance to exist, giving it mitigating value, and as a result, changing the recommendation of the jury from death to life imprisonment.

The sentence of death is vacated, and the case is remanded to the Superior Court, Cumberland County, for a new capital sentencing proceeding. *See State v. McNeil*, 327 N.C. 388, 397, 395 S.E.2d 106, 112. Our disposition on the impaired capacity circumstance makes it unnecessary for us to consider the effect of the constitutionally erroneous instructions on the other mitigating circumstances not found.

Death sentence vacated; remanded for new capital sentencing proceeding.